IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:24-CV-741-M

| | | |
|---|---|---|
| WESTLAKE FLOORING COMPANY, LLC, *a California limited liability company, d/b/a Westlake Flooring Services*,<br><br>   Plaintiff,<br><br>   v.<br><br>MORMAR LLC, *d/b/a Better Value Motors, a North Carolina limited liability company*, and AMIE MORGAN BAUDOIN,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the Plaintiff Westlake Flooring Company LLC's ("Westlake") motion for default judgment against Mormar LLC and Amie Morgan Baudoin, pursuant to Fed. R. Civ. P. 55(b), [DE-13], and Plaintiff's supplement thereto, [DE-15]. No response was filed, and the time to do so has expired. The motion is referred to the undersigned for a memorandum and recommendation to the district court. Jan. 6, 2026 Text Order; *see* 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is recommended that the motion for default judgment be allowed.

## I.   Background

On August 9, 2024, Westlake filed a complaint against Mormar and Baudoin for breach of contract, breach of personal guaranty, and foreclosure of security agreements after Mormar defaulted on a Promissory Note and Loan and Security Agreement (the "PNLSA") for a $200,000

commercial line of credit by failing to make required payments due thereunder; selling vehicles financed by Westlake out of trust, *i.e.*, without repaying Westlake for vehicles and without holding the proceeds of the sale in trust for the benefit of Westlake or remitting the amount owed; and selling or otherwise improperly disposing of Mormar collateral pledged under the PNLSA. Westlake sought not less than $97,753.05 plus accrued interest, late charges, and penalties, in addition to costs and attorney's fees, against Defendants, as well as foreclosure of Westlake's perfected security interests in the collateral. Compl. [DE-1].

Westlake filed proof of service as to Mormar and Baudoin, [DE-7, -9, -10], and sought entry of default pursuant to Fed. R. Civ. P. 55(a), [DE-11]. The Clerk entered default against Defendants on March 10, 2025, [DE-12], and Westlake subsequently filed the instant motion for default judgment, [DE-13].

## II.    Discussion

Once default has been entered, a party may seek a default judgment. Fed. R. Civ. P. 55(b). Upon default, the well-pleaded facts alleged in the complaint, as to liability, are deemed admitted. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *E.E.O.C. v. Carter Behavior Health Servs., Inc.*, No. 4:09-CV-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011), *adopted by*, 2011 WL 5325473 (E.D.N.C. Nov. 3, 2011). "In deciding whether to exercise that sound discretion, '[t]he court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action.'" *Alliance Funding Grp. v. Torchlight Academy Schools*, No. 5:23-CV-00074-M, 2024 WL 6995879, at *1 (E.D.N.C. Feb. 14, 2024) (quoting *Ryan*, 253 F.3d at 780). Finally, "the court must be satisfied that it has subject matter jurisdiction over the cause of action and personal jurisdiction over the defendants; absent personal jurisdiction,

2

'the default judgment [is] void.'" *Id.* (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

A court may enter a default judgment with or without a hearing in order to make an award of damages. Fed. R. Civ. P. 55(b)(2)(B). A hearing is not required here because the damages sought are "a liquidated sum or one capable of mathematical calculation." *W. Sur. Co. v. Beck Elec. Co.*, No. CIV. 3:06-CV-383, 2008 WL 345821, at *6 (W.D.N.C. Feb. 5, 2008) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

Here, default has been entered against Mormar and Baudoin, and they have failed to respond to the instant motion for default judgment. In support of the motion, Westlake filed an affidavit from its Vice President, Jonathan Zhan, accompanied by the PNLSA, Baudoin's personal guaranty, a UCC-1 Financing Statement, a default and demand letter, and a calculation of the Balance Summary showing $77,420.32 is owed under the financing documents, [DE-13-1]; a declaration of non-military service as to Baudoin, [DE-13-2]; a declaration of attorney's fees and costs, [DE-13-3]; and a declaration of reasonableness of attorney's fees and costs, [DE-13-4]. At the court's direction, [DE-14], Westlake also filed supplemental declarations regarding attorney's fees and costs. [DE-15]. Westlake seeks a default judgment against Mormar and Baudoin in the amount of $106,949.09, which includes the total due on the loan ($77,420.32), plus costs and attorney's fees ($29,528.77), interest as provided by 28 U.S.C. § 1961, and foreclosure of Westlake's security interests, including the immediate right to possession and liquidation of the subject collateral. Pl.'s Mot. [DE-13] at 7–10; Zhan Aff. [DE-13-1] ¶ 12; Decls. Atty.'s Fees & Costs [DE-15-1, -15-2].

First, the court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, where the amount in controversy exceeds $75,000 and the parties are alleged to be citizens of different states, among them North Carolina and California. Compl. [DE-1] ¶¶ 1–5, 17.

Second, the court has personal jurisdiction over Defendants, who are alleged to be citizens of North Carolina and were properly served. *Id.* ¶¶ 2–4; [DE-7, -9, -10].

Third, the complaint's well-pleaded allegations support the relief sought. "North Carolina courts generally recognize the validity and enforceability of contractual choice of law provisions." *Alliance Funding Grp.*, 2024 WL 6995879, at *2 (quoting *Mosteller Mansion, LLC v. Mactec Eng'g & Consulting of Georgia, Inc.*, 190 N.C. App. 674, 661 S.E.2d 788 (2008)). California law governs the PNLSA and Personal Guaranty. Zhan Aff. [DE-13-1] Ex. A , PNLSA ¶ 19; Ex. B, Guaranty ¶ 5.g. Establishing a breach of contract under California law "requires a showing of (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Alliance Funding Grp.*, 2024 WL 6995879, at *3 (quoting *D'Arrigo Bros. of California v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014)).

Here, the parties entered into the PNLSA and Guaranty, which reflect Defendant's mutual assent to all essential terms. Compl. [DE-1] ¶¶ 7, 9 & Ex. A [DE-1-2], Ex. B [DE-1-3]. Thereafter, Westlake provided Mormar with a $200,000 line of credit, but Mormar failed to make required payments due; sold vehicles financed by Westlake out of trust, *i.e.*, without repaying Westlake for vehicles and without holding the proceeds of the sale in trust for the benefit of Westlake or remitting the amount owed; and sold or otherwise improperly disposed of Mormar Collateral pledged under the PNLSA. *Id.* ¶¶ 7, 12. Westlake accelerated the indebtedness due, provided written notice of default on or about May 20, 2024, to Mormar and Baudoin, and demanded

4

payment of all amounts outstanding under the PNLSA and turnover of the collateral. *Id.* ¶ 13. Defendants failed to pay the total outstanding indebtedness due and owing under the PNLSA or turnover of the collateral. *Id.* ¶ 14. Westlake repossessed part of the Mormar collateral consisting of multiple vehicles, which have since been auctioned off or are in the process of being auctioned off and the proceeds from those auctions were applied to part of the total outstanding balance due and owing under the PNLSA and related financing documents, leaving a remaining balance evidencing resulting damages to Westlake. *Id.* ¶ 15. Accordingly, Westlake has sufficiently alleged a breach of contract claim against Mormar on the PNLSA and against Baudoin on the Guaranty.

Westlake has also sufficiently alleged a security interest in the collateral of Mormar and Baudoin on which it is entitled to foreclose. "By statute, the holder of a security interest in personal property may take possession of the collateral by judicial process." *United States v. Wise*, No. 5:14-CV-844-FL, 2015 WL 5918027, at *4 (E.D.N.C. Oct. 9, 2015) (citing N.C. Gen. Stat. § 25-9-609), *aff'd*, 639 F. App'x 193 (4th Cir. 2016). "To establish its entitlement to an order authorizing possession of the collateral, the [creditor] must demonstrate 1) that it held a valid, enforceable, perfected security interest in the property; 2) that defendants took the property under the agreement and subject to the [creditor's] security interest; and 3) that defendants are in default." *Id.* (citing *Paccar Fin. Corp. v. Harnett Transfer, Inc.*, 51 N.C. App. 1, 7–8, 275 S.E.2d 243 (1981)). "Proof of a valid and enforceable security interest requires 1) a signed security agreement, 2) that describes the collateral, 3) that was given for value, and 4) evidencing that the debtor had rights in the collateral." *Id.* (citing N.C. Gen. Stat. § 25-9-503; *Paccar*, 51 N.C. App. at 7–8, 275 S.E.2d 243).

5

Under the PNLSA and Guaranty, Westlake was granted a security interest in Mormar's and Baudoin's assets and property "now owned and hereinafter acquired" to secure the debt, and Westlake perfected its interest by filing a UCC Financing Statement. Compl. [DE-1] ¶¶ 40, 41 & Ex. A [DE-1-2] ¶ 1.a., Ex. B [DE-1-3] ¶ 2.f., Ex. C [DE-1-4]. The Financing Statement covers the following collateral:

```
All assets of the Debtor now owned or hereafter acquired, including but not limited to, all
accounts; all equipment, goods, fixtures, and inventory, including all vehicles, vehicle parts and
inventory now owned or hereafter acquired or wherever located, without limitation, purchase money
inventory, the purchase of which was financed or floorplanned by Secured Party for Debtor(s); all
documents, instruments and chattel paper; all letters of credit and letter-of-credit rights; all
securities collateral; all investment property; all intellectual property collateral; all general
intangibles; all money and all deposit accounts; all books and records, customer lists, credit
files, computer files, programs, printouts and other computer materials and records relating to
any of the foregoing; all motor vehicles; and to the extent not covered by the foregoing, all
proceeds and products of each of the foregoing and all accessions to, substitutions and
replacements for, and rents, profits and products of, each of the foregoing, and any and all
proceeds of any insurance, indemnity, warranty or guaranty with respect to any of the foregoing.
```

*Id.* Ex. C [DE-1-4]. Upon Mormar's default, Westlake accelerated the debt and demanded payment and the turnover of the collateral, but Mormar and Baudoin failed to pay the debt due or turn over the collateral. *Id.* ¶¶ 44, 45, 57, 58. Accordingly, Westlake has sufficiently alleged that it is entitled to possession and foreclosure of the collateral. *See Wise*, 2015 WL 5918027, at *4 (finding plaintiff carried burden of establishing entitlement to foreclosure where it had a valid, enforceable security interest in the property, the security interest was perfected through the filing of UCC financing statements, defendants were parties to the transaction creating the security interest, and defendants defaulted under the terms of the note).

Turning to the relief sought, Westlake seeks a default judgment against Mormar and Baudoin in the amount of $106,949.09, which includes the total due on the loan ($77,420.32), plus costs and attorney's fees ($29,528.77), interest as provided by 28 U.S.C. § 1961, and foreclosure of Westlake's security interests, including the immediate right to possession and liquidation of the subject collateral. Pl.'s Mot. [DE-13] at 7–10; Zhan Aff. [DE-13-1] ¶ 12; Decls. Atty.'s Fees & Costs [DE-15-1, -15-2].

6

First, Westlake has demonstrated that Defendants' outstanding loan balance is $77,420.32 through the affidavit of Westlake's Senior Vice President. Zhan Aff. [DE-13-1] ¶ 12 & Ex. E.

Second, Westlake has demonstrated it is entitled to its reasonable attorney's fees and costs in the amount of $29,528.77. The PNLSA and the Guaranty provide for Westlake's entitlement to "all reasonable legal fees, expenses, and collection costs, including, but not limited to, repossession and spotters, incurred by Lender, Lender's Affiliates, and/or Lender's Representatives as a result of any Event of Default, Borrower's failure to perform any obligation or satisfy any Liability under this Note or any other Loan Document, and/or Borrower's unsuccessful prosecution of affirmative claims or counterclaims against such party or parties." *Id.* [DE-13-1] Ex. A ¶ 17; *see id.* Ex. B ¶ 2.a. The court has previously recognized that under both North Carolina and California law, the prevailing party on a breach of contract action is entitled to reasonable attorney's fees and costs incurred to enforce the contract where the contract so provides. *See Alliance Funding Grp.*, 2024 WL 6995879, at *3–4. Attorney Schaeffer expended in excess of 88.5 hours on this matter, including time for numerous consultations with the Plaintiff; analysis of loan documents, extensive public records, other documents, and legal claims; legal research of numerous issues; extensive communications with process deputies in order to attempt to locate and serve defendants; preparation of correspondence, claims, pleadings, motions, and miscellaneous court filings; billed hourly rates from $250 to $300; and incurred $1,922.54 in service of process fees and mailing cost. Schaeffer Decl. [DE-15-1]. Attorney Harris, as Local Rule 83.1(d) counsel, expended in excess of 23.98 hours on this matter, including time for consultations with co-counsel; analysis and review of all proposed filings; and legal research of numerous issues; billed an hourly rate of $195; and incurred $450.13 for the filing fee and service of process fees. Harris Decl. [DE-15-2]. Both attorneys filed time records, which the court has

7

reviewed and finds to be reasonable. Westlake also provided a Declaration of Reasonableness from an attorney admitted to practice in this district who is familiar with the fees charges for like work, [DE-15-3], and the court, based on its own experience, finds the hourly rates ranging from $195 to $300 to be reasonable.

Finally, Westlake is entitled to post-judgment interest as provided by 28 U.S.C. § 1961. "[F]ederal law mandates the awarding of post-judgment interest." *Alliance Funding Grp.*, 2024 WL 6995879, at *5 (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993)). "In a diversity action, the post-judgment interest rate is set by 28 U.S.C. § 1961." *Id.* (quoting *U.S. Bank Nat'l Assoc., v. B.S. Carriers, LLC*, No. 7:23-CV-00471, 2024 WL 549904, at *5 (W.D. Va. Feb. 12, 2024)). That rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

### III.    Conclusion

For the reasons stated herein, it is recommended that the motion for default judgment, [DE-13], be allowed and Plaintiff be awarded $106,949.09, which includes the total due on the loan ($77,420.32), plus costs and attorney's fees ($29,528.77), interest as provided by 28 U.S.C. § 1961, and foreclosure of Westlake's security interests, including the immediate right to possession and liquidation of the subject collateral.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 5, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept,

8

reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed within **14 days** of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 19th day of February, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

9